Good morning and welcome to the Ninth Circuit Court of Appeals. There's all kinds of stuff to get situated here. My name is Morgan Critton. I'm one of the judges on the Circuit Court. I'm here today in Portland from Alaska, which is where my chambers are, and delighted to be here. I'll be sitting this week with Judge Wynn, my colleague whose chambers are in Pasadena, and we're both delighted to welcome and thank Judge Ezra. Thank you so much. Thank you, who's here helping us out on our calendar. I have a little bit of housekeeping before we begin. There were three cases submitted on the briefs originally scheduled for the Monday calendar, Monday, August 19th. They are 22-35870, Collins v. Sammonson, 23-1885, United States of America v. Blackmun, and 23-2139, United States of America v. Hornoff. Turning to today's calendar, August 20th, we have submitted four cases, 23-1780, United States v. Strong, 23-35442, United States v. Laframboise, 23-3556, Hillsinger v. O'Malley, and 23-1047, Maradon v. Federal Aviation Administration. There's another case set on the calendar for today on which I am not a part of the panel. It has also been submitted. That is 23-35468, Bungie. With that, we're ready to go to the first oral argument on the calendar for today. It is McRae v. Salem, City of Salem, 23-35207. Counsel, if you could give me one minute, I'm still getting my deal set up here. Okay. Good to go. Good morning, Your Honors, and may it please the Court. Othula Charia for the Plaintiff Appellant, Elokia McRae. I'd like to reserve three minutes. Sure. Just keep an eye on the clock, please. Yes, Your Honor. The rule when an officer seeks qualified immunity as a matter of law after losing a trial is that evidence favoring the officer is disregarded unless the jury was required to believe it and evidence favoring the plaintiff is taken as true. May I interrupt right there? I think you're citing the rule from the Reeves case. Is that right? That's right. Okay. Officer Johnston lost a trial. The jury found that he shot my client in the eye and it granted a verdict in her favor. But then, crediting evidence that favored Johnston rather than McRae, the district court found that he skip-fired the round off the ground, and on that basis, it granted him qualified immunity. That was error. There was evidence at trial that Johnston couldn't have skip-fired the round, that if he had, it would have had literally zero chance of hitting anyone in the eye. Whether there was or not, we don't know that from the special verdict, right? So the judge is in a position to make a finding one way or another, is she? That's correct. The special verdict didn't answer that question, but the evidentiary standard exists to prevent sort of freewheeling factual finding after a jury verdict. I think I'm trying to ask a different question, but I'm not asking it very well. So we have three special verdict findings here, and they're quite limited. One of them, of course, is that the force was excessive. But we don't know why the jury thought the force was excessive. Maybe they thought skip-firing was excessive. Maybe they thought that the defendant shot, you know, direct shot. We just don't know. So my question is, is there any case law that allows the district court in this posture at 50B to make a finding, a fact, based on that record, as long as it doesn't conflict with the jury verdict? Not that I know of, Your Honor. The Tan-Lam case is, I think, the most recent and the case that's most on point. And what Tan-Lam says is that where the jury was asked specific questions in special interrogatories, those answers control. Where there are open questions of fact that need to be answered to render a decision on qualified immunity, the same standard as in Reeves is used. Meaning? If I could just unpack that. Meaning, so that's what we have. We're in the latter situation where there's some open question. Exactly. And so my question was, can the judge make those findings as long as they don't conflict? She would have to view all the contested evidence, you know, in the light most favorable, right? Yes. She'd have to do that. And as long as she is consistent with the summary judgment standard, can she go forward and make findings of fact at the Rule 50B stage? I think to the extent that those findings are consistent with the evidentiary standard, yes. Okay. Because ultimately the question of qualified immunity and the question of whether the officer violated clearly established law does require the answer sometimes to questions that are not answered by the jury. Right. So not to belabor the point, but your problem isn't, I think your argument isn't, that the district court was prevented from making any findings of fact. I think, if I'm understanding you correctly, your argument is that the findings made here are contrary to the controlling standard. That's right, Your Honor. Thank you. Let me ask you this, Counsel, because I think the problem is really created by the way the parties set up these special findings, right? So I think in handling this motion, sometimes courts are forced to make certain inferences that's fairly based on the record. And it seems to me that this is that sort of situation because the trial was conducted on multiple theories, and so now the question is what theory is most consistent with the findings and, of course, with inferences in your favor. I know that in the record you relied very much on Officer Johnston's testimony that it would have been nearly impossible. I'm probably paraphrasing, but something along the lines that if he had skipped firing, it really wouldn't result in her being hit in the eye with something that he fired in an event. Was that the only evidence that you have, or were there other pieces of evidence in the record that you want to share with us? Yeah, there's quite a bit of other evidence, Your Honor. Multiple witnesses testified that a skip-fired round couldn't bounce above about two and a half feet high. Right. No, I understand that. I guess the impossibility of it, because it's unpredictable. You're firing on the rounds. There are multiple little rubber pieces flying all over the place. So I know it's designed not to go high enough to hit the eye, but the crux of that testimony, that if he'd skipped fire, it couldn't have bounced as high as hitting her in the eye, that came from Officer Johnston, correct? It came from Johnston. There's also evidence to that effect from a plaintiff's expert, and Your Honor said that it's unpredictable. I think you were maybe quoting a plaintiff's expert because that was in my friend on the other side's briefing. But the quote from the expert was, you can't determine in which direction they're going to go, especially depending on the terrain, because the round is incredibly unpredictable. So the expert was talking about the direction being unpredictable because they're bouncing around, they're hitting each other, but not about the magnitude of the bounce. That was – he also testified about that in response to questioning from – Excuse me, who's the he in your sentence? The expert, sorry. The expert testified about the magnitude of the bounce? He actually did.  It's on pages 542 to 43 of the – of ER-3. Uh-huh. And he didn't use the word magnitude. I'm sort of paraphrasing a little bit, but I'll quote it directly. Okay. Defense counsel asked him, I'm just saying it would slow down once it impacted the ground, right? Just under the basic law of physics. And he said yes. Okay, so does he come any closer to saying – to answering Judge Wynn's question? It's the height of the bounce. I don't think he says anything more than that about the height of the bounce. All right. That was my understanding from reviewing the record that the best piece of evidence you have to argue that the inference should have gone the other way is from Johnstone himself. That's right, Your Honor. And just sort of, I don't know, to maybe head off a question there, Reeves didn't say that the court should give credence to the non-movance evidence. It said the court should give credence to evidence favoring the non-movement. So it doesn't really talk about which side put in the relevant evidence. Well, it says more than that. It says, although the district court should review the second – excuse me, should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. Exactly right, Your Honor. So apply that rule, if you would, please. Was the jury required to believe that Officer Johnstone skipped shot? Absolutely not. Was the jury required to believe his testimony that he did not direct fire? No. All of that was controverted or, you know, there were inferences that the jury could draw from the other evidence, like the evidence that he himself, his own testimony, that a skip-fired round couldn't hit her in the eye. Right. I think that's right, and that's how I apply that rule, too. But it does circle back to Judge Wynn's point, which is this is a very peculiar situation, where the special verdict form didn't ask the question that, of course, in hindsight, we wish it had. And the trial judge is left in a position where she had testimony that certainly suggests that he skipped shot or at least that that was his training. He says that's what he did. Nobody says he didn't. Right? Nobody says he didn't. And yet this rule from Reeves seems to suggest that she was required to disregard that testimony. So no one says he didn't because, you know, this is a round that travels at 200 miles an hour. There's not going to be an eyewitness that sees it travel from the muzzle of his gun to McCrae's eye. So the only thing that's left is so the jury found, you know, on the one hand, he didn't target her. But on the other hand, he did shoot her in the eye. And so then the question is, well, how did it get from the barrel of his gun to her eye? And there's two, you know, sort of metaphysical possibilities. One is that he skip-fired it. The other is that he direct-fired it. The evidence that he skip-fired it. Well, he argued that he didn't fire it at all. That's right, Your Honor. But the jury did say that's the other finding, that he shot her. That's right. Exactly. Okay. All right. So the jury rejected both sides. You know, the jury rejected the aiming theory, but it also rejected the I didn't fire it theory. And so that leaves an open question for the district court. This happened in Tanlam, too, by the way. In Tanlam, too, there were open questions left after the jury's factual findings, and the court said, well, we follow the Reeve standard there. So then the evidence that Johnston, that a skip-fired round couldn't hit McCrae in the eye, that evidence favors McCrae. That means the district court should have believed that. Johnston's testimony that he never direct-fired rounds, that evidence favors Johnston. So unless the jury was required to believe it, and I don't think it was, then the district court should have disregarded it. And, by the way, here's why the jury wasn't required to believe his testimony that he always skip-fired rounds. When plaintiff's counsel asked, you know, is it part of your training to always skip stinger rounds off the ground, he said, I think it's dependent on the situation and it's a possibility we could do it. So his own testimony was a little self-contradictory. And the jury, after Johnston lost the trial and brought a motion for judgment as a matter of law, the standard is which testimony, the standard is that the district court should have believed the testimony that favors McCrae. The testimony that favors McCrae is that a skip-fired round couldn't have hit him in the eye, and that dependent on the situation, he was sometimes trained to direct-fire the round. And believing that testimony, Johnston is not entitled to qualified immunity under Nelson, in which the facts were, you know, very similar to here. You also brought a state court cause of action for negligence. That's right, Your Honor. You want to address that? Yes, absolutely. So this is a persistent error in the District of Oregon's jurisprudence. Excuse me. And it's idiosyncratic to the district. Other districts, and there are opinions from this court from California talking about negligence and Fourth Amendment claims coexisting, and it's sort of not even a thing. But in the District of Oregon, they often preclude the two claims going together to the jury on the notion that the two are always conflicting. And that's not true. What the Fourth Amendment requires is a volitional act. It doesn't require intent as to the target hit. That's what this court said in Nelson. It's also what the Supreme Court said in Brower. And volitional discharge is fully compatible with negligence as to the target. And there are many negligent discharge of a firearm cases that involve a volitional discharge. It's not someone tripping and falling and squeezing the trigger. It's someone who meant to pull the trigger but was negligent as to where that round went. And that's a negligence claim. And, in fact, that's exactly the theory that we say that the jury found that Johnston – that's exactly the factual theory that I think the jury believed both with the Fourth Amendment claim and if the negligence claim – That's right. Sorry. For the Fourth Amendment claim. And they would have for the negligence claim if it had been before them. So I think that theory – If you could back up to – as Judge Edger said, this claim didn't get to the jury. Yes. So at the time the judge ruled on the state negligence claim, what evidence in the record was there to suggest that the shooting was negligent as opposed to intentional? I – it's – to be honest, Your Honor, I'm not sure what the summary judgment record was. So this was a weird procedural posture because the – There wasn't evidence indicating this is anything other than intentional. It seems like the judge was between a rock and a hard place here. Well, so no. That's not quite right. Trial counsel did put forward the theory of – I'll just quote. So he intended the act, but perhaps he was negligent in the consequence of where that sting around went. Where was that statement made? That is the – sorry – the supplemental excerpt of record pages 9 to 10. But isn't that argument from counsel? It is, Your Honor. So what evidence was there? It's the evidence – it's the evidence in the summary judgment record because this was before trial. That's what I'm asking, counsel. I fully appreciate – Judge Ezra's explained that to us. It was at the summary judgment level. That's what I'm trying to follow up on. What's your response? I don't know the summary judgment record, Your Honor. But I will say Judge McShane, who had the case before Judge Emmerich did, allowed the negligence claim to proceed. So there was a ruling that there was enough evidence at the summary judgment stage. And then at the motion and elimination stage, it was dismissed, sort of. That's where I was somewhat – because I saw that at one point the court, the previous judge had said you can try this, and then it transferred, and then the second judge, the judge who's on appeal today, said no. That's exactly right, Your Honor. And, you know, that's a procedural irregularity. I'm not sure if there's case law about how that should shake out. As a practical matter, how do you envision this case going forward? You want the Fourth Amendment claim sent back, but would you then try the negligence case as well? I think if the – Because given the evidence that came out at trial, they're potentially conflicting. So I think under the factual theory that the district court – that we're saying the district court should have believed after trial that he, you know, he intentionally fired, but he was negligent. You know, he didn't care. He didn't have any care about where he was shooting. He was shooting directly into the crowd. That theory is compatible with both the Fourth Amendment and the negligence theory. As a practical matter, if this court reverses unqualified immunity, I'm not sure we would go to trial on negligence. I mean, I think that's a question for trial counsel. But separately from that, I think it would be well for the court to rectify this error in the District of Oregon's jurisprudence. Did you want to save any time? I do. Thank you very much. Okay. You'll have a minute when you come back. Morning. Thank you, Your Honors. Aaron Heissel on behalf of the defendants. May it please the court, counsel. I think I want to deviate from my prepared remarks and jump right into the procedural irregularity that there have been several questions on. And some procedural history, I think, will inform both the questions we have on QI as well as the questions we have on negligence. The First Amendment complaint remained the operative complaint through trial. And I feel I think the best – I was one of the trial attorneys. I feel I think the best adjective is like sandbagged by this, oh, well, then he direct fired at the heads of other protesters theory that they're now trying to champion as their path to victory here because it wasn't ever part of the case. It was never part of the case. So the questions that have been raised about the posture and the position that the district court judge was put in was exactly because of that. Here's the difficulty I have because I'm concerned, too. I think the plaintiffs did change their theory. I appreciate that. Qualified immunity was part of the case, and it was going to be part of the case. And there's one case, right? It's the Davis case, Nelson v. Davis, that was going to, I think, most closely align. Correct. I am only one of three judges up here, but this is my view of it. I tried to put myself back. How do we get here? This is a case of how do we get here? And it seems to me that had to be coming. And so there are a couple ways that might be distinguished, but the big obvious way is if the officer was firing a – what do you call it, a skip shot, a skip round? Skip round, yeah. Yeah, if he did that. And yet that doesn't appear on the special verdict form. Did the defense request that question for the special verdict form? There was quite a bit of colloquy between the court and the counsel, conferral, all of that around what those special verdict form questions were, and the question directly from the court to counsel as we're preparing, both of the pretrial conference and in those first days of trial as we were still fussing about whether or not this question was going to make it on the trial, on the verdict form, was are you, Mr. Bragg, going to be arguing that she was targeted? Yes. That is the theory. But, counsel, you're not answering my question because you're representing the other guy, right? The defendants had an interest in having this case distinguished from Nelson, right? And so to the extent you're talking about sandbagging and fair is fair, 20-20 hindsight is also so perfect, right? I get that because that's what we do for a living, so forgive me. But there was one case that had to be distinguished, and it's a case with which for your client that was an affirmative defense. You bore the burden. Yeah, but we're still crafting the questions for the jury based on what we understand the evidence and the theories to be. I don't understand your question. Let me try again because I think I share the same concern that Judge Christian just asked. The bottom line is these special findings, I think, created now some confusion. Inferences have to be reached. They get the benefit of that. Did you stipulate to these factual findings or did you ask for some alternative factual findings to be given and were denied by the district court? I think what was on the verdict form was pretty close to what was agreed upon by the parties by the time they got there. Yes. Which then turns to where we end up to fill that void. And their posture is that we have to get rid of anything that benefits the moving party here, us. But I want to be clear about a couple things here. This is an interesting 50-B motion because we're not trying to overturn the jury's findings. Both sides are trying to figure out what fills the void. It's the gap between the findings. Correct. And I don't think it's so the standard from Reeves, right, the trial court must disregard all evidence favorable to the moving party that the jury was not required to believe. And that gets to you're in a summary judgment posture in terms of viewing the evidence. You just have a more complete record than declarations and things of that nature. And Reeves is clear, as well as the evidence supporting the moving party, that is uncontradicted or unimpeached. So if you'll indulge me, I'll give you a few of those things. Okay. The videos. The videos aren't terribly helpful. I watched every one of them. Exhibit 110 and 201 at 211. Their theory now that they try to fill the void that we're calling it, that they fill the void with, is that Officer Johnston must have instead targeted the heads of other protesters. Yes. I appreciate that there are problems with his argument, but here's the deal. The jury found that excessive force was used, and you're just stuck with that. References of today. And we don't know why. And take it from us, given what we do for a living, it is not unusual for us to not know how a jury got to where they got to. Sure. They could have decided that any force, any use of that, what's the munition called?  Forgive me. That any use of stinger rounds under that circumstance, given that video, was excessive. We don't know. We don't know. And so, like counsel here is arguing, there's only the two voids. There's an errant round, which was actually presented at trial and argued at trial and all of those things. Or their new theory now, post-trial, which is that he targeted the heads of some other protester. We were not even on notice to put that on the verdict form because that was never part of this case. Your claim was the claim for qualified immunity, sir. Correct. That's what we're trying to get at. Correct. And based on what the First Amendment complaint, that he intentionally targeted her. Then we go to summary judgment. Officer Johnston targeted her. We go to pretrial arguments. He targeted her. All of those things. This would be distinguishable factually from Nelson if he does not target her and we have a different type of munition altogether that is only used in two ways, skip-fired or targeted. Targeting other people was never part of this case. It was never anything. But it seems to be your position that you were going to win on targeting. You did. And that necessarily means that your client was entitled to qualified immunity because there was a skip-fired shot. What if the jury decided that that was excessive force under these circumstances, that the use of skip-fire was excessive force? We're not challenging that. We accept that portion of it because he would still be entitled to qualified immunity under Nelson. That's why we're here. No, no, no, no, no. You can't accept something the jury didn't find. You don't have that finding. You don't have a finding that he skip-fired. Right. But just as your previous question, the excessive force doesn't illuminate which one of those two possibilities. That's why I was going to go through my list of evidence that does illuminate, that's uncontradicted, that would survive any of these other challenges, even if you get into all of those other things. Could the jury have thought that he direct-fired without specifically targeting her? That would be consistent with both findings of excessive use of force and not targeting her directly. But inconsistent with the record. Well, that's why I asked counsel about the evidence from Officer Johnstone himself, saying that if he had skip-fired, it would have been impossible for that round to hit her in the eye, just given the way that these fingers work. But as to everyone that talked about those capabilities of this round, they're all talking about the unevenness or lack of unevenness of the surface. Even as to the quote from Officer Johnstone, the very next things out of his mouth there, I don't even like shooting these in training in gravel because it will kick up rocks and it will do things. Did your expert testify or any officer testify that skip-firing would result in an errant shot that could have hit her in the eye? I think their expert is the closest testimony to that, saying that these are uncontrolled. Everybody agrees with that. You have 18 rounds coming out of the muzzle. You're not going to be able to control them. They're going to go in the general direction that you fire, but they're going to spread. All of that is uncontradicted. So then it just becomes, is there any evidence in the record to support that he direct-fired at other people's heads, and that's why an errant round hit her in the eye? And there is not. Well, except his testimony, that if he had shot down, it couldn't have hit her, so that leaves the possibility. I'm just belaboring the point. But you seem to be, and I promise we're going to get out of the way and let you list your evidence for us, but you seem to be arguing, maybe you could anticipate this in your presentation, that given this evidence, the jury should have found or had to find, and I just don't see that they had to make that finding. That's my hang-up, but I'm going to listen carefully.  So then their expert is also asked, hey, if this was fired directly, wouldn't you expect to see other people react in the videos? Yes. Did you see that? No. That's uncontradicted. We're entitled to that, the inferences that come from that evidence. The same expert, he is testifying about all the unpredictability about it. All I want to highlight there is that every time you see that evidence in the record, look to the context. They're all talking about how, with the surface, the Salem officers ---- But I think at some point you've got to tackle Officer Johnstone's testimony that it was impossible for that round to hit her in the eye had he skip-fired. You've got to confront that head-on. That's the best piece of evidence they have. That is the best piece of evidence they have, and he's saying, I've never used it in the field, I've only used it in training, and this is my training. But they don't have to believe him. What's that? They didn't have to believe him. He also said that he didn't fire the second shot at all, that someone else must have shot her. But if the rest of the record doesn't support any of that, that other folks were targeted in the head, I don't think they're entitled to fill the void with something that was not argued or evidence presented of. There was no evidence of that presented either. So then you have the record the district court had, the arguments the district court had, and it also includes Sivon Adams. At summary judgment, this is the other person standing next to plaintiff, that plaintiff is arguing at summary judgment was the target. Plaintiff and Sivon Adams were the target of the round that hit plaintiff. She is hit in the calf and the shin. That's at ER 108 and ER 133. That's uncontradicted. She says it's after the smoke goes. So if you can compare that to the videos, that has to be the round that hits Ms. McRae, and that's after, uncontradicted. We're entitled to the inferences that flow from that uncontradicted evidence. What inferences do you draw from that? She's hit in the shin and she's standing right next to the plaintiff?  That he fired it in a skip-fire capacity? Even though he says it couldn't have bounced that high. Yeah. And the other officer said it couldn't have bounced that high. Yes, because all of that in the context of the irregular surfaces, for example, I mean the person standing right next to the plaintiff is picking up the CS canister at the time that round goes off that the jury determined hit Ms. McRae. It could have hit the metal canister in the road. It could have hit another rock in the road. Everybody's saying in a sterile environment they would not expect it to bounce that high, but it doesn't mean that there can't be some irregularity. And I'm not arguing that Officer Johnston's testimony is to be ignored by both sides. I'm saying that the overall record, the district court did not err in any manner in finding that the new theory presented after trial was not supported and the one that was argued. But after trial, who had the burden? We did. Right. So can I keep going with my burden? You can, but I'm just trying to give you every possible opportunity to, you're not grappling with the problem that at least two of the three judges have. Which is just Officer Johnston's testimony, and I think taking it as a whole, it's not problematic for us at all. Okay. I really don't. The videos are so clear that nobody else is shot in the face. There's no one else to even be hit in the face. There was no testimony of anybody else being hit in the face. And their theory that they're filling the void is he direct-fired 18 rubber pellets into a crowd at face height. All of that evidence would have to exist. During closing, did counsel argue it as direct-fired, and I'm using specifically that term instead of targeting. The whole focus was on targeting. Much less precise terminology than now the direct firing. It was all targeting is my memory of the closing arguments. There was a very specific argument, I think, made by the plaintiff that he targeted her because of her race. There was an argument that he may have targeted her because she was wearing red. Anyway, the jury didn't buy that. They decided she was not targeted. But that's quite different, to Judge Wynn's point, than saying that the officer didn't direct fire at the crowd. And that's where hindsight's always perfect. But it feels so unjust to say, well, you didn't ask the question of all of their pretrial filings or I'm going to be arguing that she was targeted. Did your pretrial filings argue qualified immunity? Yes. I'm going to transition back to some more evidence I'd really like. There was also Pruden. She testified that she was standing in the crowd right by Ms. McRae when Ms. McRae was hit, standing right there, not hit, did not see anybody else hit. Ms. Jackson, standing in the crowd, looking, quote, looking straight forward at the police, not hit, no testimony, seeing anybody else hit, that's at 313, 318. Ms. Pruden's at 297 and 299. There would be actual consequences to what they're trying to fill the void with, and none of that evidence is present. Your argument is because somebody else wasn't hit, she wasn't hit? No, Your Honor. I'm having a hard time understanding why, if somebody's standing next to her and isn't hit, that's relevant. Because of the way this operates, the Stinger round would operate where there would be 18 small projectiles all coming out at the same time and going in the general direction of where that was. Well, maybe he fired high and one of the pellets went low. That happens. I was a military officer. I'm familiar with how rounds fly. I know what a shotgun is. I mean, somebody shoots, you know, the vast majority of them can go over somebody's head, but all you need is one. Right, and I think that's going beyond Reeves, I guess is my point. Well, I don't know. You know, here's the problem for me. So I've been a district judge for a very long time, three and a half decades plus, and I've seen – I can't even begin to count the number of jury verdicts and I can't even begin to count the number of jury verdicts that I might have thought should go a different way. The test for overturning a jury verdict is incredibly high, incredibly high in this circuit and virtually every circuit. So where there's a lot of conflicting facts and you've got even a reach, even a reach of facts that might support the verdict, does the district judge have the right to step in and say, you know, I think that's a reach. I'm going to rule the other way. I don't know exactly what you're using the term reach for, but that's where I'm thinking you can't fill the void. The judge cannot fill the void. Well, the jury found that he fired the weapon. Correct. And we know she got hit. Correct. I don't know where the void is. The void is that he did so in a manner that was targeting protesters' heads. That's the void that is being filled with negative inference. He says one thing and there is some evidence otherwise. And so it just seems that there's a lot of conflict here. I couldn't agree with you more. And maybe if I was the district judge sitting, I would have disagreed with the verdict. But that wouldn't be my job. But it comes back to the position it put both us and the district judge in to, like, say, the void that theoretically you're trying to fill it with. He shot really high, and there was just one low that hit her. We weren't even on notice enough to cross-examine witnesses on that type of area. What did he say he did? You tell me again. What did he say he did? Officer Johnston? Yeah. He said he did not believe he fired the second shot, which would have been the shot that hit McCray.  But the jury found otherwise.  There you are. Your Honor, with any remaining time, I'm over time already. You're about almost four minutes over time. I'll ask you to wrap up. Thank you. I was just going to ask if there were any questions on the negligence piece of things. Thank you. It doesn't look like there are. Thank you for your patience with our questions, Counsel. I'll see how much of this I can get through in 60 seconds. As far as the idea that we were sandbagging defense, or that we're presenting a new theory and that's unjust, the defense theory that he skip-fired the round is also new. Both theories are new in some sense. The defensive theory was he didn't fire a round at all. Something came from the crowd and hit her. So I don't think there's any injustice in saying the district court has to pick among two things that are not exactly what was argued below. But, on top of that, trial counsel did argue the firing without aiming theory. Those are two different things. There's he fired into the crowd directly, and then there's he was aiming at McCray. The second thing is a mental state piece that the jury rejected, rejected that he had the mental state that he was targeting McCray. But it agreed that he hit her, and trial counsel did argue, with 12 seconds left, I'll say, at page 801 of VR4, based off the injuries, it appears Officer Johnson directly fired his 40-millimeter gun, loaded with approximately 18 rubber bullets, traveling at over 200 miles an hour into the crowd, directly fired his gun into the crowd and at McCray. Is that at closing? That was, Your Honor. Could you give me the slide again? That is page 801 of ER4. For ER801? Exactly. So, trial counsel made the argument that we're making now. Meanwhile, defense counsel, or defense, did not make the argument that Johnson skip-fired the round. There's no injustice. The trial court just has to fill in a gap that the jury didn't have. So, for all of these reasons, the court should reverse and remand for entry of judgment in accordance with the verdict, and also reverse the dismissal of the negligence claim. Thank you. Thank you. Thank you both for your advocacy. It's a tricky case. We'll take it very seriously and rule as soon as we can. For now, we'll take it under advisement, please, and move on to the next case on the calendar.
judges: CHRISTEN, NGUYEN, Ezra